# CHARLESTON.

STATE *ex rel. v.* WHITE OAK RAILWAY CO.

Submitted November 17, 1908.   Decided January 19, 1909.

1. MANDAMUS—*Recitals of Alternative Writ—Sufficiency.*

In *mandamus* by a coal operator commanding a railroad company, as required by section 2364, Code 1906, to make "reasonable provision" for the transportation of all coal offered it for shipment by him, the recitals in the alternative writ showing that the things commanded thereby, were substantially those which, in, prior negotiations between the parties, the railroad company had regarded as reasonable and proper, will on a motion to quash the writ be regarded as equivalent to the recital of other facts and circumstances, necessary to show the reasonableness of such demand, and as making a *prima facie* case entitling relator to the relief demanded.   (pp. 21, 22.)

2. CARRIERS—*Carriage of Freight—Reasonable Provision for Transportation.*

What will constitute such "reasonable provision" for the transportation of coal will depend on the facts and circumstances of each individual case.   (p. 23.)

3. SAME.

Provisions which a railroad company had determined before the alternative writ issued were proper to be made for the transportation of relator's coal offered it for shipment, the court will assume on final hearing may reasonably be required by its mandate; at least, until a different showing be made.   (p. 23.)

4. SAME.

Where in order that "reasonable provision" be made by it for the transportation of coal and coke offered it for shipment, as required by said section 2364, Code 1906, the facts and circumstances demand it, a railroad company may be compelled by mandamus to construct and operate upon its right of way a side track and switch for that purpose.   (p. 23.)

5. CONSTITUTIONAL LAW.—*Due Process of Law — Carriers — Side Tracks.*

Requiring such "reasonable provision" to be made does not amount to a command to enter into a contract therefor with relator, or to build and maintain a permanent structure on such right of way, to be continued indefinitely; nor to the taking of the private property of such railroad company for private use without due process of law, inhibited by Article 14 of the

Amendment to the Constitution of the United States. It is a mere command of the temporary use by such company of a part of its right of way for the purpose of performing a duty imposed upon it by law.   (p. 24.)

6.   MANDAMUS—*Alternative Writ—Amendment.*

The alternative writ of *mandamus* though regarded as a pleading—the declaration or complaint—is nevertheless the writ of the court; and where the substantive matter thereof is sufficient to justify a part, but not all that is commanded by the writ, this Court may, in a case of original jurisdiction, so amend the alternative writ as to make it conform to the mandate of the peremptory writ awarded and that may properly be commanded thereby.   (p. 26.)

*Mandamus* by the State, on the relation of the Mt. Hope Coal Company, against the White Oak Railway Company and others.

*Alternative writ amended.   Peremptory writ awarded.*

PRICE, SMITH, SPILMAN & CLAY and C. R. SUMMERFIELD, for petitioner.

DILLON & NUCKOLLS, for respondents.

MILLER, JUDGE:

The defendant owns and operates a railroad in Fayette county, from Macdonald Station on the Loup Creek branch of the Chesapeake and Ohio Railway Company, to Price-Hill Station, a distance of about three miles. The relator, the Mount Hope Coal and Coke Company, has opened up a coal mine on the line of defendant's railway near Mount Hope Station, where it has built a substantial tipple, and is ready to mine and ship coal. The defendant owns its right of way in fee, of the width of one hundred feet. It is impossible for relator to reach the main track of defendant, as now located, for shipping its coal except by side track and switch connection therewith constructed, in part at least, upon defendant's right of way. In June 1907, negotiations were begun between relator and defendant for side track privileges, and on June 25, 1907, the defendant's general manager wrote the relator's attorney, referring to the negotiations begun saying: "I at that time advised you the freight rate was ten cents per ton. This I beg to confirm. Since looking over the records I find the rate is ten cents per ton from the mines operating on this line, and as the Mt. Hope Coal Co. have

such a small area and the shipments from that area will be limited, we could not agree to furnish them a side track at our expense. We will, however, if they are willing to do the grading, pay for rails, ties, fastenings and switch connections, and labor in laying track, permit them to tap our main line and we will handle the coal from their operation on the basis of ten cents per ton of coal, distributing the cars on the Branch in proportion to the capacity of the mine. It being also understood that this switch connection is made for the purpose of shipping coal and in default of at any time shipping less than one carload of freight per annum for every lineal foot of track the White Oak Railway Company reserves to itself the right to remove the switch connection. This for the purpose of preventing dead switches on their main line."

After this letter was received the relator began and completed the building of its tipple, extending the same out over the defendant's right of way, some fifty feet, so as to reach the proposed side track, and also did the work of grading, furnished ties, steel rails, frogs, etc., for switch connection, and other material for the purpose of completing said side track and making the proper connection with defendant's main track, expending therein, and in opening its mine, some seventeen thousand dollars. It does not clearly appear under what special contract or agreement with the defendant, if any, relator extended its tipple over on the defendant's right of way, other than such as may be implied from said letter of June 25, 1907, and the negotiations which seem to have lead up to it; but it is alleged in the petition, and not denied, that the work of building and completing the tipple and of grading and providing rails, ties and other materials for the side track, was carried on by the relator with the knowledge and acquiescence of defendant, and with no objection thereto by it until in the latter part of December of that year, when defendant refused to connect up the switch with its main track except on condition that relator would enter into a contract with it embodying substantially the terms of the Norfolk and Western Railway Company contract. Pending these negotiations, however, a contract was drawn up by defendant's counsel which relator was willing to execute, but which the defendant refused. Relator also proposed a contract in the form required by the Chesapeake and Ohio Railway Company for

operators along its line, but this defendant also refused to accept, and refused to make any contract except that proposed by it. Neither of the agreements proposed contained any provision relating to the relator's occupancy of defendant's right of way with its coal tipple; nor does it appear that any of the negotiations contemplated any special provision therefor.

Having failed to come to an agreement for such side track and connections the relator now seeks to compel defendant by *mandamus,* and by force of the statute, to make reasonable provision for the transportation of its coal offered for transportation. It conceives that reasonable provision to be, according to its petition and the alternative writ, to require defendant to connect the said side track, constructed by relator, Mount Hope Coal and Coke Company, at its mines, with the defendant's railway line, or to permit said relator to make such connection; to furnish relator its due and proper proportion of the railway cars and equipment available for coal shipments from the region in which petitioner's mine is located; and to place such cars upon said side track and remove the same when loaded, in the usual way in which said cars are placed and removed for other shippers along said line; and that it desist from discriminations in favor of other corporations named.

The defendant challenges the sufficiency of the alternative writ, and moves to quash the same, and also files its return in writing thereto. The motion to quash is predicated upon three grounds: first, that the alleged right of relator is not based upon violation of any duty imposed upon defendant by law; second, that the alternative writ does not allege any facts or circumstances upon which it can be determined whether defendant has refused to discharge its legal duty to relator; and third, because the alleged rights of relator are based wholly upon a duty or obligation arising out of an alleged contract or agreement between relator and railway company, which the court by *mandamus* has no power to enforce.

The first and third grounds are evidently based upon the erroneous theory that relator rests its right to relief upon its negotiations for a contract; or upon the proposition contained in the defendant's letter of June 25, 1907. We do not so understand relator's position, but on the contrary, that the right claimed is a statutory right. It is argued for defendant that

where the relator's rights rests wholly on a special contract involving no question of public trust or official duty the writ will be refused.    Merrill on Mandamus, section 16.

Without contract a railroad company has a public duty to discharge.    Our statute, section 2364, Code 1906, upon which relator especially relies, provides that "every railroad corporation along whose line of railroad the industries of mining coal and manufacturing coke is carried on, shall without discrimination between or amongst shippers, and without unnecessary delay, make a *reasonable provision* for the transportation of all such coal and coke offered for transportation over its railroad, and no such railroad corporation shall discriminate in rates, distribution of cars or otherwise against or among shippers of coal or coke offered for shipment on its line or lines." Section 2366, imposes a penalty upon such railroad corporation, its officers and agents, who knowingly and willfully violate any of the provisions of that act.    Because the negotiations for a contract failed, has the relator lost any of its statutory rights?    We think not.    The statute does not contemplate any agreement of the parties.    The mandate of the statute is that the railroad company shall, without any unnecessary delay, make a reasonable provision for the transportation of all coal and coke offered for shipment, a command which the railroad company cannot neglect without incurring the penalty of the statute.    What will constitute such reasonable provision will depend, of course, upon the facts and circumstances of each individual case.    But the statute makes the industries of mining coal and manufacturing coke the special subject of railroad regulation.    The extent and importance of these industries in this state, in the judgment of the legislature, required this, and we think the statute should be given a construction broad enough to accomplish the purposes plainly intended.    On the second ground of the motion, if we understand the purpose of relator in setting forth the prior negotiations for a contract, it was that they might serve as a substitute in part, at least, for allegations of fact necessary to show the reasonableness of the provision required by it, and we think they do serve such purpose.    It might have been better, and but for these recitals of the alternative writ, it would have been necessary no doubt, in order to show the reasonableness of such provisions, for relator to have alleged and proven the prob-

able output of its mine, the number of cars it would likely require per day, or per month, or per annum, the probable expense of making such provisions, and any other facts available, this for the purpose of showing the extent and nature of its operations, and the reasonableness of its demand, for, as we construe our statute, provision that is reasonable must be made. The alternative writ recites relator's ownership of the mine, the preparation made by it for mining and shipping coal, the expenditures incurred by it therein, and that it is ready to mine and ship coal; also the acreage owned by it; its readiness to provide the material and pay for the labor of construction of such side track and switch, in view of which it is alleged defendant was willing to have such side track and switch connection made, if only the relator would agree to the terms of a contract which the relator conceived to be unjust and onerous. These recitals of the alternative writ, we think, present a *prima facie* case entitling relator to relief.

On the merits, the return of defendant admits all the facts which we deem material; and in the brief of counsel they say that they are ready to admit that under our statute defendant would be required to make a reasonable provision for the transportation of coal and coke, and under certain circumstances such reasonable provision would require the putting in of switch connections; but they say that before defendant can be required to make switch connections with a private side track for relator, it must be alleged and proven that relator has sufficient product to offer for transportation to justify defendant in maintaining and operating such side track and switch; that they can be made and operated safely, on a practicable grade, and that relator has made provisions upon its own property to load the product of its mine. As we have said we think the alternative writ sufficient in this particular.

The defenses relied upon by defendant in its return are: first, that relator seeks to compel defendant to enter into a contract with it, for the use and occupation by it, of a part of the defendant's right of way, with its coal tipple and a side track; second, that if the first proposition be not involved, another object of the writ is to compel the defendant, against its will and discretion, to construct, or permit relator to construct on its private right of way a side track for the private use of the

relator; and this without showing that such side track can be constructed at the point indicated so as to be safely and profitably operated by the defendant; and third, that there is no warrant of law therefor, and that the court is without jurisdiction to compel by *mandamus* performance by the defendant of either of said acts. It is conceded, however, that relator has the right to compel defendant to make suitable provision for shipping of its coal, but that it has not a clear legal right, to have this done in the way and manner required, because it involves the taking of its private property for private use, which is not due process of law, and violative of the provisions of Article 14 of the Amendment of the Constitution of the United States.

In its first proposition we think the defendant wholly misconceives the purposes of the writ. While the writ recites the things done and negotiations had between the parties in the vain endeavor to come to an agreement, it contains no command that defendant enter into any agreement with the relator. The issues presented upon the writ and return do not call upon us to decide, and we do not decide, whether, as an original proposition, the relator could compel defendant by *mandamus* to permit it to occupy, with its coal tipple, a part of the defendant's right of way. This the relator has already accomplished, if not by express agreement, at least, by the acquiescence and consent of the defendant. The evidence shows that such occupancy by other coal operators has, in many instances, been permitted in the same coal field by the Chesapeake and Ohio Railway Company. And in its return to the writ, in this case, defendant makes no real objection to such occupancy of its right of way by relator, either with its coal tipple or with the proposed switch and side track, if only relator will accept the terms of the contract proposed by it in relation thereto, a condition not suggested or required by it in its proposition of June 25, 1907.

The only question of merit presented here is the legal one, covered by the second and third defenses; namely, whether under our statute defendant can be compelled by *mandamus,* under the facts and circumstances of this case, and upon the conditions proposed by relator, to construct, or permit relator to construct the side track as proposed. It is conceded that reasonable provision may be commanded. Whether the proposed side track can be operated safely upon a proper grade, or with profit to

the defendant; and also the question whether the occupancy of a portion of the defendant's right of way therewith as required, is reasonable, are questions, which it seems to us were practically determined by the parties themselves prior to the issuance of the present writ; for the defendant is shown to have consented thereto, or at least acquiesced therein; and what the parties themselves had determined was such reasonable provision for the transportation of relator's coal, we may, it seems to us, properly assume, may reasonably be required by the mandate of the court, at least, until a different showing be made. The only way in which reasonable provision could be made for transportation of coal, delivered from a tipple into cars, would be by building a side track, connected by a switch to the main track, either upon the right of way of the defendant or upon the private lands of the relator. The parties determined between themselves that the proper place for the location of such switch was on defendant's right of way. The relator claims, and there is evidence to support its claim, that the only feasible and proper place for such side track is on defendant's right of way.

But has the Court power by *mandamus* to compel defendant, upon terms, to construct and operate the proposed side track and switch connection on its right of way? We think it has. This question we do not conceive to be covered and concluded, as defendant contends, by *Missouri Pacific R. Co.* v. *Nebraska,* 164 U. S. 403. The question there was whether the railroad company could be compelled by *mandamus* to enter into a contract with relators, upon like terms and conditions contained in contracts with other private persons, permitting them to build and maintain a private and permanent warehouse upon the defendant's right of way. The state court, construing the statute of Nebraska as conforming to the Constitution of the United States, had required defendant to enter into such a contract. The Supreme Court conceded the right of the railroad company to permit its grounds to be occupied by others with structures convenient for the receipt and delivery of freight upon its railroad, so long as a free and safe passage was left for the carriage of freight and passengers—citing *Grand Trunk R. Co.* v. *Richardson,* 91 U. S. 454; but says "but how far the railroad company can be compelled to do so, against its will, is a wholly different question." But the court says in that case, "This court con-

fining itself to what is necessary for the decision of the case
before it, is unanimously of opinion that the order in question,
so far as it required the railroad corporation to surrender a part
of its land to the petitioners, for the purpose of building and
maintaining their elevator upon it, was, in essence and effect,
a taking of private property of the railroad corporation, for the
private use of the petitioners.   The taking by a state of the
private property of one person or corporation, without the owner's
consent, for the private use of another, is not due process of law,
and is a violation of the 14th Article of Amendment of the Con-
stitution of the United States."   Many cases are cited for this
proposition.   This, however, is not the proposition we have
before us.   Nor do we think *Northern Pacific R. Co.* v. *Washing-
ton,* 142 U. S. 492, a case in point as defendant contends.   The
particular point decided in that case was, that without legislative
action making it the plain duty of the railroad company, the
court was without jurisdiction to compel by *mandamus* the rail-
road company to build and maintain a railway station at the
particular point commanded.   In that case the court quotes
extensively from *People* v. *New York, L. E. and W. R. R. Co.,*
104 N. Y. 58, 66, 67.   The question in the New York case
was whether, without legislative requirement, the defendant com-
pany could be compelled by *mandamus* to build a station-house
at the particular point commanded by the writ.   The statutes
of New York permitted railway companies for public use in the
conveyance of passengers, persons and property to erect and
maintain all necessary and convenient buildings and stations
for the accommodation and use of their passengers, freight and
business.   But the court said, contrary to the findings of the rail-
road commissioners that "As the duty sought to be imposed
upon the defendant is not a specific duty prescribed by statute,
either in terms or by reasonable construction, the court cannot,
no matter how apparent the necessity, enforce its performance
by *mandamus*.   It cannot compel the erection of a station-house
or the enlargement of one," that "As to that the statute imports
an authority only, not a command, to be availed of at the option
of the company in the discretion of its directors, who are empow-
ered by statute to manage its affairs," etc.   After that decision
in New York the legislature, Laws 1892, chapter 676, amended
the statute giving the railroad commissioners general supervision

over all railroads, and empowering them to require additional terminal facilities, and the courts power and authority to enforce their just and reasonable decisions and recommendations by *mandamus,* subject to appeal. It may be proper to note that Justices Brewer, Field and Harlan dissented in *Northern Pacific R. Co.* v *Washington.* Justice Brewer says in his dissenting opinion: "A railroad corporation has a public duty to perform, as well as a private interest to subserve, and I never before believed that the courts would permit it to abandon the one to promote the other. Nowhere in its charter is in terms expressed the duty of carrying passengers and freight. Are the courts impotent to compel the performance of this duty? Is the duty of carrying passengers and freight any more of a public duty than that of placing its depots and stopping its trains at those places which will best accommodate the public? If the State of Indiana incorporates a railroad to build a road from New Albany through Indianapolis to South Bend, and that road is built, can it be that the courts may compel the road to receive passengers and transport freight, but in the absence of a specific direction from the Legislature, are powerless to compel the road to stop its trains and build a depot at Indianapolis? I do not so belittle the power or duty of the courts."

As we have said, the purpose of the present writ is not to command a contract for the building of a permanent structure by the relator on the right of way. The writ contemplates no such object. It commands a reasonable provision for the transportation of relator's coal offered for shipment, which the statute authorizes. Such reasonable provision does not involve the permanent maintenance of the proposed switch and side track. Nor does the writ command defendant to continue the same indefinitely as a permanent structure. *Jones* v. *Newport News, etc. Co.,* 65 Fed. 739 (31 U. S. App. 92); *Detroit etc., Ry.* v. *Interstate Commerce Commissioners,* 43 U. S. App. 308. In *Missouri Pacific R. Co.* v. *Nebraska, supra,* the court emphasizes the fact that the "order in question was not limited to temporary use of tracks, nor to the conduct of the business of the railway company. But it required the railway company to grant to the petitioners the right to build and maintain a permanent structure upon its right of way." In *Jones* v. *Newport News, etc., Co. supra,* referring to the latest Illinois case relied upon says;

"the Supreme Court of that State has held that the railroad company has a discretion to say in what particular manner the connection shall be made with its main track, but that this discretion is exhausted after the completion of the switch and its use without objection for a number of years," but, says the court, "this is very far from holding that there is any common-law liability to maintain a side track forever after it has once been established." And, referring to other Illinois cases the same court says: "They depended on statutory obligations, and were not based upon the common law." In *Missouri Pacific R. Co.* v. *Nebraska,* the court says of that case, "nor does it present any question as to the power of the legislature to compel the railroad company itself to erect and maintain an elevator for the use of the public; or to compel it to permit to all persons equal facilities of access from their own lands to its tracks, and of the use from time to time of those tracks, for the purpose of shipping or receiving grain or other freight, as in *Rhodes* v. *Northern P. R. Co.* 34 Minn. 87, in *Chicago & N. W. R. Co.* v. *People,* 56 Ill. 356 (8 Am. Rep. 690), and in *Hoyt* v. *Chicago, B. & Q. R. Co.,* 93 Ill. 601."

We quote from these decisions for the purpose of showing how differently the courts view the subject, where there is a demand for the erection of permanent structures for private use on a railroad right of way, and where as in this case the demand relates to a temporary structure to be placed thereon under the direction and control of the railroad company. We are of opinion, on the authority of these cases, that our statute requiring that reasonable provision to be made, justifies in part the writ in this case, and that unless we give this statute such construction, it will not accomplish the purposes intended by the legislature, and leave the subject entirely within the control and discretion of railroad companies.

But is relator entitled to all the relief commanded by the *mandamus nisi?* It commands first, "that you connect the side track constructed by relator, Mount Hope Coal and Coke Company, at its mines, with your railway line, or permit said relator to make said connection;" second, "that you furnish to said relator, Mount Hope Coal and Coke Company, its due and proper proportion of the railroad cars, and equipment available for coal shipments from the region in which the mines of said relator is

located, and place such cars upon said side track and remove the
same when loaded, in the usual way in which such cars are
placed and removed for other shippers upon your railroad line;"
and third, "that you cease and desist from discriminating against
said relator, Mount Hope Coal and Coke Company, and in favor
of the Sherwood Coal and Coke Company and the Price-Hill
Colliery Company in the matter of switch connections, distribu-
tion of cars and other facilities." We find on the pleadings
and proofs the relator entitled to only such relief as is covered
by the first command of the writ. It is not alleged or proven
that the relator has ever demanded of the defendant, or that
the defendant has ever refused to furnish a due and proper
proportion of the cars; nor do we think it is sufficiently al-
leged, and it is not proven that the defendant has dis-
criminated against the relator in favor of the other companies
mentioned in the matter of switch connection, distribution of
cars and other facilities. On the contrary the return and the
evidence show that there is no such company as the Sherwood
Coal and Coke Company; that the Price-Hill Colliery Company
is not a producer of coal at all, but that the Price-Hill Fuel
Company, the owner and operator of two coal mines, known as
the Sherwood and Price-Hill mines, has tipples and side tracks
upon its own land and premises, and that said Price-Hill Fuel
Company has entered into a contract embodying the same terms
offered relator, and which it refused to accept; and that in fact
there has been no discrimination against the relator in this
respect.

What then is the proper disposition to make of the case?
The old and rigid rule, still adhered to in some jurisdictions,
was that the peremptory writ of *mandamus* must strictly follow
the command of the alternative writ; and that if all that is
asked in the alternative writ cannot be granted, nothing that is
asked can be granted. This rule is referred to, and recognized,
in our own cases of *Fisher* v. *Charleston,* 17 W. Va. 628, 640;
*Doolittle* v. *County Court,* 28 W. Va. 158, and *Hebb* v. *Cayton,*
45 W. Va. 578. See also 26 Cyc. 490, 491, and cases cited in
notes. But this rule in the later cases has been very much
relaxed, and in those states where either by statute, or by the
prevailing rules of practice, the right of amendment of plead-
ings has been extended to writs of *mandamus,* the practice now

is to direct the mandate of the alternative writ to so be amended as to conform to the command of the peremptory writ. In *Fisher* v. *Charleston, supra,* the practice followed, on writ of error, was to set aside the order or judgment awarding the peremptory writ, and remand the case to the lower court with directions to issue a new alternative writ commanding that to be done which was justified by the pleadings and proofs, in legal effect an amendment of the original writ. In this state the rules, including the rules relating to amendments of pleadings are applicable to *mandamus,* and if the alternative writ be amended after service it need not be then served in its amended form. *Fisher* v. *Charleston,* 17 W. Va. 628; *Town of Mason* v. *Railroad Co.,* 51 W. Va. 183, 189. The mandate of the writ is peculiarly within the control of the court. It need not in the first instance conform to the prayer of the petition. The court may fashion it to suit the case made by the petition. *Fisher* v. *Charleston, supra,* 630. If the court may thus control the writ at the time of directing it, there is no good reason why it may not control it afterwards by amendment, so as to make it conform to the mandate of the peremptory writ. This practice is fully justified by modern decisions, and text writers, and we are of opinion it is the proper practice, and should be followed in this state, although resulting in a modification to some extent of the rule heretofore recognized and followed. 2 Dillon Mun. Corp. (4th Ed.), section 879; High on Extraordinary Legal Rem. (3rd Ed.), section 519; *State ex rel.* v. *Crites,* 48 Ohio St. 142, 173; *State ex rel.* v. *Acting Board of Aldermen,* 1 S. C. 30; *State ex rel.* v. *Baggot,* 96 Mo. 63, 71; *United States ex rel.* v. *Union Pac. R. Co.,* 4 Dillon 479 (Syl. 5); 26 Cyc. 490, 491.

The pleadings and proofs we think entitle the relator to a peremptory writ of *mandamus,* directed to defendant, commanding it, on condition that, before beginning the work, the relator shall pay or secure to be paid to it the cost and expense thereof, to commence forthwith and to complete as soon as practicable a safe and suitable side track, connecting the same by a switch with relator's mines, using the location graded and prepared by the relator, and the ties, rails, and other materials furnished by it, as far as consistent with proper side track and switch construction, or permit relator to do said work in accordance with said specifications. It will therefore be so ordered; and also

that the alternative writ be so amended as to conform in all respects to the peremptory writ directed hereby.

*Alternative Writ Amended.   Peremptory Writ Awarded.*