# CHARLESTON.

WILLIAM P. HUBBARD V. EQUITABLE LIFE ASSURANCE SOCIETY.

Submitted January 22, 1918.  Decided January 29, 1918.

1. INSURANCE—*Action for Breach of Loan Agreements—Declaration.*
   In an action on a policy of life insurance, for damages occasioned by a breach of an agreement therein made for a loan of money by the insurer to the insured, the short declaration or count contemplated by sec. 61 of ch. 125 of the Code is applicable and may be used.  (p. 665).

2. SAME—*Action for Breach of Loan Agreement—Count—Bill of Particulars.*
   In such case, a count charging a breach of the stipulation in general terms and a bill of particulars, itemizing the damages claimed, sufficiently state the grounds of the action.  (p. 665).

3. APPEAL AND ERROR—*Writ of Inquiry—Delay.*
   Mere delay in the execution of a writ of inquiry, in an action in which the issues were finally made up and tried, is not available as ground of error.  p. 668).

4. INSURANCE—*Life Insurance—Agreement to Make · Loans—Construction.*
   An agreement in a life insurance policy to make loans on it, at a specified rate of interest, payable in advance, of stipulated sums of money, upon the due assignment of the policy to the insurer, as collateral security for the loans, contemplated continuance of such loans, at the option of the borrower, by payment of the interest thereon in advance, until maturity of the policy, provided it is kept alive by payment of the premiums thereon as they become due and payable; and the borrower is entitled to a provision in the loan agreement made under the clause, conferring the right of renewal by such payment of interest, for such time as he keeps the policy alive, within the period required for maturity.  (p. 668).

5. SAME—*Life Insurance—Loan Agreement—Provision for Renewal.*
   Such provision may be made by the execution of a paper separate and distinct from that evidencing the loan, and, if such separate paper is offered, the insured is not justified in declining the loan merely because the stipulation is not inserted in the latter instrument.  (p. 668).

6. SAME—*Life Insurance—Loan Provision—Cancellation of Policy —Notice.*
   Under such a provision in the policy, the insured is entitled to

reasonable notice of intention to cancel the policy for default in payment of the loan and an opportunity to save his policy by payment after such default, and refusal to make the loan without a stipulation in the loan agreement for right of cancellation of the policy, without notice, is a breach of the agreement to make it. (p. 668).

**7.** SAME—*Life Insurance—Breach of Loan Agreement—Damages.*

Emphatic refusal of the insurer, in such case, to make the loan stipulated for, otherwise than upon an agreement waiving notice of intention to cancel the policy for default in payment of the loan, excuses the insured from further efforts to obtain it, and his application for it, under an agreement providing for such notice, is sufficient proof of his readiness and willingness to accept it. (p. 668).

**8.** SAME.

If the insured, after refusal of the loan upon proper terms, borrows the money so stipulated and applied for from other persons, upon collateral of his own, other than the insurance policy, and at a rate of interest higher than that specified in the loan provision of the policy, but the lowest obtainable, he is entitled to recover the interest so paid, in excess of what he would have had to pay the insurer for the use of the same amount for the same period, under such loan provision, and the reasonable value of his services in procuring the loan, but no compensation for the use of the securities so employed as collateral. (p. 668).

**9.** TRIAL—*Evidence—General Objection.*

A general objection to evidence partially admissible, is properly overruled. · It should be special, going only to the inadmissible part. (p. 673).

**10.** INSURANCE—*Life    Insurance—Loan    Provision—Construction—Evidence.*

On an issue as to the proper construction of the loan stipulation above mentioned, provisions of policies subsequently issued by the insurer, defining the conditions upon which it makes loans to its policy-holders, are admissible, as tending to prove the practicability and reasonableness of the insured's interpretation of the stipulation. (p. 673).

**11.** WITNESSES—*Life Insurance—Loan Provision—Evidence.*

A local agent of the insurer whose business is the selling of its policies and collection of its premiums may properly be allowed to testify to his personal knowledge of the loan provision of such subsequent policies, and to refresh his memory by reading the same from a manual used by insurance agents. (p. 673).

**12.** EVIDENCE—*Action for Breach of Loan Agreement.*

If, in such case, the insured conducted his negotiations for a

loan under the policy, through a local agent of the insured, the correspondence between the agent and his principal is admissible evidence to prove the demand for the loan, even though the fact is established by other evidence.  (p. 675).

Error to Circuit Court, Ohio County.

Action by William P. Hubbard against the Equitable Life Assurance Society.  Judgment for plaintiff, and defendant brings error.                         *Reversed and remanded.*

*Guy R. C. Allen, J. B. Sommerville, Alexander & Green,* and *Brown, Jackson & Knight,* for plaintiff in error.

*J. Bernard Handlan,* for defendant in error.

POFFENBARGER, PRESIDENT:

The judgment complained of on this writ of error is for damages for alleged breaches of agreements in three life insurance policies, to make loans to the insured and holder of the policies, the elements or factors in the recovery being the difference between the rate of interest agreed upon in the policies, five per cent., and the rate the borrower had to pay on loans procured elsewhere, six per cent., compensation for the use of collateral securities on which such loans were secured and remuneration for the borrower's time and services in obtaining the loans.  The three policies conferred right to loans amounting in the aggregate to $17,680.00, $3,990.00 on one, $6,140.00 on another and $7,550.00 on the third.  The loss in interest was estimated at $562.23, in the testimony, and $500.00 was claimed on each of the other two items of the bill of particulars.  The jury assessed the damages at $1,562.23 and judgment was rendered on the verdict.

A question of practice raised by an assignment of error, based on the overruling of a demurrer to the declaration, is whether a demand of this kind can be asserted upon a declaration in the form contemplated for actions on policies of insurance, by sec. 61 of ch. 125 of the Code.  The argument against the use of the statutory form, invokes the rule of strict construction, because the statute is derogatory of the common law, and that rule applies to remedial legislation. *Bank of Weston* v. *Thomas,* 75 W. Va. 321.  However, it does

not forbid allowance of operation of a statutory provision to the full extent of its terms, when it applies, unless the intention to limit it to a narrower function is disclosed in some way. Sections 61 to 66 of ch. 125 of the Code, constituted ch. 66 of the Acts of 1877, entitled "An act to regulate pleadings in actions on policies of insurance." It provides that "A declaration or count on a policy of insurance, whether the policy be under seal or not, may be in effect" as prescribed. Intent to limit it to fire and life policies is clearly negatived in the form prescribed, by this direction: "Here insert the cause of loss in general terms, for example: by fire, by damages of navigation or otherwise, according to the fact." In so far as it relates specially to declarations on life policies, it mentions only actions for death claims. A literal adherence to it would not limit the act to actions for indemnities for loss of property or injury thereto and death claims. The first part of it contemplates "loss in respect to the property (or subject) insured" by the policy sued on. This is general and seems to have been intended for use in all actions on all policies of insurance except in particular instances, actions for death claims under life policies, covered and specially dealt with in the second part of the form. The death claim seems not to have been regarded as indemnity for a loss, wherefore it is distinguished from other causes of action arising out of insurance policies and described as a right of action occasioned or called into being by the death of the insured. T hefirst part of the form contemplates actions for losses in respect to subjects of insurance other than property, such as health and carning capacity, susceptible of loss or impairment by sickness or casualty. Indemnity against such losses may be provided by policies. In other words, a policy may combine life, accident and health insurance, and, if the action on such a policy is one for indemnity, the declaration or count would not follow the latter part of the form. The cause of action would be within both the purpose and letter of the general form. A stipulation in a policy, binding the insurer to loan the insured money, is clearly a provision of the policy, though it may not be an insurance, in the strict sense of the term, and a breach thereof gives a

right of action on the policy. The statute makes the policy a part of the declaration. *Staats* v. *Georgia Home Ins. Co.*, 57 W. Va., 571. Its provisions are substituted for the common law allegations of right of recovery, as to everything except averment of the breach of some particular promise or agreement, shown by the policy itself filed as part of the declaration, and giving the right of action. The causes of action specified in the form prescribed are those most frequently asserted, and they were obviously used by way of illustration. The title of the act is general, going to all actions on policies of insurance, and sec. 1 provides that a declaration or count on such a policy may be in effect what the form indicates, and the indication is general and comprehensive. The validity and enforcibility of the stipulation involved here are dependent upon compliance with all vital conditions and covenants of the policy, just as any other obligation imposed by it is, wherefore this clause and the action predicated on the breach thereof are clearly within the reason and purpose of the enactment of the statute. A loan can be demanded only upon a live and subsisting policy. *Union Cent. Life Ins. Co.* v. *Buxer*, 62 O. St. 385; 14 R. C. L., p. 942. The breach of any condition or covenant of the policy, vital to its life or efficiency, would justify refusal of a loan and afford ground of defense to an action for breach of the undertaking. For these reasons, we are of the opinion that the statutory method of pleading may properly be followed in the assertion of demands of this class. The other criticisms of the counts on the policies, lack of allegation of the promises sued on, averment of the promises upon which the action is based, breaches of the contracts and assignments of the policies or offers to assign them, would take the case entirely out of the statute, if sustained. They amount to no more than specific invocations of common law rules of pleading, with the observance of which the statute dispenses. Refusal of the defendant to make the loans it agreed to make is averred and the statute requires nothing more, except the filing of the policies or copies thereof with the declaration.

The defendant's demand for a more particular statement of the nature of the plaintiff's demand was properly over-

ruled. From the policies filed with the declaration and the allegation of refusal to make the loans, the defendant had full knowledge of everything it was required to meet, except the items constituting the aggregate of the damages claimed, and they were supplied by the bill of particulars. The assignment of error based on this ruling seems to have been abandoned.

Refusal of the court to execute the writ of inquiry, upon the demand of the plaintiff, after considerable delay occassioned by consideration of the demurrer and demands by both parties for specifications of the cause of action and grounds of defense respectively, is not available as matter of error. Until actual entry of judgment, the right of defense existed, without disclosure of an excuse for delay, *Citizens Trust and Guaranty Co.* v. *Young*, 75 W. Va. 241, and none had been entered at the date of demand for entry thereof. For mere delay in procedure, if undue and unreasonable, there was no doubt a remedy that could have been invoked at the time.

The clause in each of the policies, upon which the action is founded, reads as follows: "After this policy has been in force three years the Society will make loans thereon at five per cent. interest per annum, payable in advance, of the respective amounts stated in the following table, upon the due assignment of this policy to the Society as collateral security for such loan." When the plaintiff applied for loans under it, the defendant submitted to him a form of agreement binding him to repay the loans on the dates on which the premiums should become payable, and then providing as follows: "In consideration of said loan the party of the second part hereby assigns, transfers and sets over all his right, title and interest including the right to exercise any and all options and privileges in policy No. 1036147 on the life of Charles N. Brady issued by said party of the first part, together with all money which may be payable under the same to said party of the first part as collateral security for the repayment of said loan. In the Event of Default, in the repayment of said loan upon the date hereinabove mentioned, the party of the first part is hereby fully authorized and empowered, without notice to and without demand for payment by the party of

the second part, to cancel said policy and to apply the cash surrender value of such cancellation to the payment of said loan and any unpaid interest; and upon the maturity of said policy, either by death or lapse of time, the party of the first part is hereby authorized and empowered to exercise any right or option and accept and extend any privilege or other benefit held, possessed or enjoyed by the party of the second part, under the terms and conditions of said policy, including the right to commute any amount due in installments, whether provided for in the policy contract or not. Should the surrender value of said policy exceed the amount of above loan with interest at five per cent thereon, then, and in that case, the excess value above the loan and interest shall be due and payable to the legal owner or owners of the policy on demand.''

Declining to sign it in this form, the plaintiff made three interlineations therein, one providing for extension of the loan by payment of interest in advance for one year, another for thirty days notice of intention to cancel the policy for default of payment of the loan on the due date thereof, and the third, for waiver of further demand of payment. The defendant expressed its intention and determination, in correspondence, not to alter its form in any respect. Thereupon the plaintiff borrowed the money from other parties, using as collateral, certificates of stock in corporations, owned by him.

That the loan provision bound the defendant to make renewable or successive loans, to the extent of the specified loan values, after the policy had been in force for three years, until the maturity thereof, provided the policy was kept alive by the payment of premiums and performance of conditions and covenants necessary to its continuance in force, if any, and payment of interest in advance, from year to year, does not seem to be disputed. In the correspondence, there is a protestation against purpose on the part of the defendant, to deny this right in the policy holder, but his claim of right to notice of cancellation is flatly denied. A letter written by its superintendent to the local agent with whom the plaintiff negotiated, expresses its purpose and its construction of the contract, in the following terms: ''I note the interlinea-

tions in the loan agreement, but regret to say that the Society cannot accept any loan agreements with changes made therein. It is the form of loan agreement carefully prepared by counsel, and it is necessary that it be executed without change in every case. In the matter of a renewal of the loan, the Society would be very glad to furnish the beneficiary on this contract with an additional document in the shape of a letter agreeing to continue the loan in accordance with the terms of the contract, although this is not necessary, as the contract itself brings it out. The matter of the notice is one the Society cannot consider any more than a bank will consider requirements to give notice in its loan forms. As a matter of practice the Society does send out notices in regard to renewal of loans through the payment of interest prior to their maturity, but we cannot and will not put ourselves in position of perhaps complicating either the policy or the loan through any claimed failure to do so. We would be glad to state what our practice in this matter is in a separate communication, but will not bind ourselves to send any notice.''

A fair and reasonable construction of the policy, considered as a whole, leaves no doubt as to the purpose of the loan provision. It is a part of the policy and must be interpreted in the light of the general purpose of the contract in which it is found. It cannot be assumed that the defendant intended to bind itself to make renewable loans, at a fixed rate of interest below that usually paid, to any persons other than the holders of live policies. There was presumptively a consideration for such an agreement. After the lapse of a policy for any reason, there would be no real justification for the favor or indulgence stipulated for in the loan provision. It was a means of encouragement of sales of policies and payments of premiums, keeping them in force. There is an express forfeiture for non-payment of premiums and settlement on a basis which includes deduction of any indebtedness to the defendant under the contract. This necessarily involves, by the very terms of the agreement, extinguishment of the loan, in consequence of non-payment of any premium. Assignment of the policy as collateral security for the money loaned and

the interest, necessarily carried right of cancellation for non-payment of the loan or the interest.

A stipulation in the loan agreement, for renewal on payment of interest in advance, provided the premium should have been, or should be contemporaneously, paid for the period of the renewal, so as to keep the policy in force for such period, would have been in exact accord with the reciprocal right of the parties, under a proper construction of the policy. The agreement submitted and rejected by the plaintiff was a manifest departure from it, since it would have made the debt absolutely due and payable on the date specified. It made no provision for the borrower's clear right of renewal, and by necessary implication denied it. But the tender of a separate instrument giving the right, though informal, was a sufficient compliance. The two papers, if exchanged, would have been read and considered together and so harmonized as to carry into effect the intention clearly expressed. *Pardee et al.* v. *C. Crane & Co.*, 74 W. Va. 359. A deed absolute on its face may be held to have effected only a conditional grant, upon disclosure of a defeasance in a separate paper executed by the grantee. *Hoffman* v. *Ryan*, 21 W. Va. 415; *Kyger* v. *Depue*, 6 W. Va. 288.

The provision in the proposed agreement, for cancellation of the policy without notice, in case of default in payment of the loan, was also inconsistent with the policy contract. It does not call for a loan agreement of that kind. It binds the insured to make a due assignment of the policy as collateral security, but it does not say the assignment shall carry right to the assignee to cancel it without notice and an opportunity to show lack of default or to pay the loan and save the policy, after a default. As the days of grace allowed in the third clause of the division entitled "Privileges and Conditions" do not apply to defaults in the payment of loans, the right to pay after default is not expressly provided for in the policy. As to it, the policy is open to construction, and the agreement proposed would have amounted to a practical construction by the parties, binding upon them. The assignment stipulated for, as a condition of the loan, was not defined otherwise than by the use of the word, "due," and the phrase, "as collateral

security," but it is contended such an assignment as banks customarily take, in making loans on collateral, was contemplated. The difference between the relations of these parties and those obtaining between a bank and a borrower is very marked. This is a contract to make a loan on certain conditions indicated in general terms. In the other case, there is no contract and no obligation to make the loan. Nothing has been previously settled between the parties. Here there is a contract to make a loan and it is silent as to right of cancellation without notice, for default. Such right is deemed not to exist, in the absence of a waiver expressed or reasonably and fairly implied. Jones, Col. Securities, sec. 730 to 732. Moreover, the subject matter of the assignment stipulated for is wholly unlike commercial paper. It is an executory contract based upon conditions that have changed and cannot be restored, wherefore its loss may be far more detrimental than the loss of a merely pecuniary demand. The rates of premium advance with age and physical infirmities liable to occur at any time may have rendered it impossible for the insured, in any case, to obtain new insurance at even higher rates. The principle of analogy fails for total dissimilarity in situation and circumstances.

Lack of proof of plaintiff's readiness, willingness and desire to take the loan upon proper conditions, and deviation of the form as altered by him, from the true interpretation of the contract, in that it fails to provide for continuance of the policy in force by payment of premiums, are urged against the verdict. His application for the loan and expression of willingness to execute his obligation for it and assign the policy warranted the jury in finding his willingness and desire to take it. Nothing in his conduct indicated unwillingness to sign an agreement making the maintenance of the policy a condition of continuance of the loan. At the very inception of the negotiations, he was met with a flat refusal to provide for notice of default as a step preliminary to cancellation. That excused further negotiation on his part, and he was under no duty to suggest conditions favorable to the defendant. It seems to have been amply able to take care of its own interests.

An exception was taken to the overruling of a general objection to the introduction of a letter from Thomas B. Sweeney, the local agent of the defendant, through whom the plaintiff negotiated for the loan, directed to the defendant's superintendent and urging compliance with the conditions suggested by the plaintiff. Some of the matter contained in it may have been inadmissible, but it was clearly admissible for proof of the plaintiff's efforts to obtain the loan referred to in it. Under such circumstances, a general objection is unavailing. It must be special and limited to the inadmissible part of the evidence or the purpose for which it cannot be considered. *State* v. *Hood,* 63 W. Va. 182; *State* v. *Calhoun,* 67 W. Va. 666; *Billups* v. *Woolridge,* 80 W. Va. 13.

The policy under which the first loan was applied for, was issued in 1901. A provision of a form of policy used by the defendant in 1911, relating to loans and allowing the borrower all the conditions claimed by the plaintiff and even more, was admitted over an objection. As this tended to prove reasonableness of the plaintiff's construction of the contract, in the estimation of the defendant, as disclosed by its subsequent conduct relating to the subject matter, it was relevant and material, wherefore the objection was properly overruled. *State ex rel.* v. *White Oak Ry. Co.,* 65 W. Va. 15. Although the provision was read from a book not prepared nor issued by the defendant, nor used by the witness, defendant's local agent, the court permitted the reading thereof, on the ground of the right of the witness to use it to refresh his memory. He said he knew the company had issued policies containing the provision read, since 1907. As it was not the basis of the action and the evidence went merely to the defendant's conduct, it does not fall within the rule requiring production of the best evidence. The witness' knowledge of the conduct in question was admissible. He said the provision was a standard one known in all policies issued since some time in the year 1907.

In as much as the plaintiff borrowed the money from banks, on collateral other than the policies, owned by him, and did not hire or borrow collateral for the purpose, the testimony of two witnesses proving the customary rate paid for the

use of borrowed collateral, was objected to, but the court admitted it. A majority of the members of this court are of the opinion that the evidence was inadmissible. Judge Miller and I think the court properly admitted it. The collaterals were used to accomplish the purpose of the defendant's broken agreement, and the plaintiff's right to compensation for its use is, we think, clear. In the absence of a precedent, the question turns on general principles, and the owner of property used in the performance of a broken obligation of another to him, is entitled to compensation. If it had been a horse, an implement or a machine so used, the right would be clear and admitted. That the property used was of a different kind cannot logically constitute an exception.

The plaintiff cross-assigns error in the refusal of his proposed instruction No. 4, which would have told the jury he had right to recover for the use of his collateral securities. The disposition of the assignment of error, relating to the evidence adduced to prove this item, sustains the refusal of the instruction.

His instruction No. 3, is founded upon the theory of right of recovery for his time and labor devoted to procurement of the loans from banks, and he proved by a witness, that brokers charged one-fourth of one per cent. for procuring loans, in the community in which he resided, but not that he had paid that rate. He procured the loans himself. The argument submitted in support of the assignment of error, based on the giving of the instruction, does not seem to question right to compensation for such services, but it denies sufficiency of the evidence to warrant the instruction. The evidence does not detail the days or hours of service, and it proves the loans in question were only parts of larger ones obtained. Notwithstanding these circumstances, it justified the giving of the instruction. As a general rule, such services are not compensated for on the basis of rates by the day or hour. Such compensation is made ordinarily on a percentage basis. Susceptibility of apportionment of the value of the service required in procuring the larger loans of which those in question were parts, is obvious.

All of the instructions requested by the defendant were

contrary to the conclusion here expressed, as to the interpretation of the contract and the rights of the parties thereunder, wherefore they were properly refused. In substance and effect, they would have been directions to find for the defendant. The court properly told the jury, in an oral charge, they should find for the plaintiff and assess his damages at not less than $562.00, the amount of the interest he had had to pay, in excess of that stipulated for.

Exclusion here of the item for compensation for the use of collateral securities, which the jury necessarily included in their verdict, makes it excessive. It is so for another reason. The proof of value of services in procuring loans does not warrant recovery of $500.00 on that account. The usual compensation to brokers for obtaining loans in the plaintiff's community, is, according to the evidence, one-fourth of one per cent. and nothing for renewals. He says he handled the $17,680.00 on about thirty loans, but this is qualified by an admission that some of them were renewals. Just how many were actual loans and how many renewals, he does not say. His evidence is too uncertain on this point to justify recovery of the amount claimed and allowed for services.

The letter of Thos. B. Sweeney, agent, to the superintendent, transmitting the form of agreement with interlineations made by the plaintiff, and dated, March 30, 1911, was admissible to prove transmission of the altered form. In view of other evidence of the fact, it may not have been important, but it was relevant and material. The court should have admitted it. For reasons stated in the disposition of the assignment of error predicated on the admission of Sweeney's testimony, the loan clause used in the policy of 1915, issued by the defendant, should have been admitted. No evidence offered to prove purpose on the part of the defendant, to discourage policy loans, is pointed out in the cross-assignment of error, pertaining to it, or elsewhere. The court will not search the record for it.

The judgment will have to be reversed, the verdict set aside and a new trial allowed.

*Reversed and remanded.*