## NATIONAL UNION FIRE INS CO et v PIERCE et

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 18, 1932

Carlyle & Carlyle, Youngstown, for plaintiffs in error.

W. O. R. Johnson, Youngstown, for defendants in error.

ROBERTS, J.

These propositions of alleged error are argued together by counsel for the plaintiffs in error. Plaintiff below evidently sought to base their cause of action upon the policy which was delivered to them only, and did not seek to bring in the master policy. This was offered by counsel for the Insurance Company and the court refused to receive it in evidence, and this is the first complaint of prejudicial error, it being claimed by counsel for the Insurance Company that it took these two policies, as far as the Pierces were concerned, to make one complete insurance contract and determine the rights and liabilities of the parties. It was provided in the customer's copy or certificate as follows:

"This is to certify that the premium has been paid on insurance on the motor vehicle named below. It has been procured for your benefit, and also for the benefit of The H. L. Braham & Company, the endorsers of the notes secured by the below named motor vehicle, only for the perils shown subject to the terms and conditions of an open policy issued to and in possession of The H. L. Braham & Company."

There the policy which the purchaser had referred to the master policy for the terms and conditions under which the Insurance Company might be liable or incur liability to the purchaser of the car. It then further provided:

"In consideration of and subject to all stipulations and conditions contained in the open policy—."

That is, the master policy,
"—numbered above and in consideration of the premium paid The National Union Fire Insurance Company of Pittsburgh, Pa., does hereby agree to indemnify the H. L. Braham & Company, assured, and the purchaser named above against loss or damage by fire, theft and transportation from the date specified below," and so forth.

Again it is said:

"It is understood and agreed this is a copy which the National Union Fire Insurance Company issues and the holder accepts as a memorandum for his information, and the company assumes no additional liability," and so forth.

It thus may not be contradicted that there was this relationship between these policies, that the one given to the purchaser of the automobile referred to the other policy issued to and held by the Finance Company for a determination of the terms of the policy and to exhibit the contractural relations existing between the parties. Now, referring briefly to authorities upon such proposition:

"In construing a contract which expressly incorporates another contract by reference, the two contracts must be read together."
9 O. Jur., 405, §178.

"Where a writing refers to another document, that other document, or so much of it as is referred to in it, is to be construed as part of the writing."
Williston on Contracts, Vol. 2, p. 1211.

"Since a contract must be construed as a whole, effect must be given to writings incorporated to the contract by reference."
Page on the Law of Contracts, Vol. 4, 3534.

"An insurance contract may consist of separate papers."
Hubbard v Equitable Life Assur., So., 95 SE, 811.

"An insured who accepts a policy incorporating the provisions of another policy as part of the contract is bound by such provisions, although the policy referred to is in

possession of the insurer, and is never seen by the insured, who knows nothing of its terms."

Connor et v Manchester Assur. Co., 130 Fed., 743; 70 L. R. A., 106; 14 R. C. L., 935.

"An action against the insurer under a group insurance policy, by an employe, must be brought upon the contract contained in the policy issued to the employer and not upon the certificate issued to the employe by the employer."

Hardie v Insurance Co., 63 A. L. R., 1035.

The conditions in the instant case are somewhat analogous to group insurance. From these and other authorities which have been examined, the conclusion seems necessarily to follow that the contractural relation of the insured and the insurer could only be determined by consideration of both of these policies, and that the court in refusing to receive the master policy committed error in so holding, and admitting for consideration only the customer's certificate or policy.

Again, it is claimed that the court erred in refusing to determine the question of salvage after the court withdrew that proposition from the consideration of the jury as being a matter for the court to determine, to which the defendants below excepted. Also that the court erred in refusing to charge the jury in its general charge after argument upon certain oral propositions requested by the defendants below, to which the defendants below excepted.

The instructions of the court to the jury in this case were of considerable length, and in connection therewith there is incorporated in the bill of exceptions a discussion between counsel and the court, constituting several pages of the record concerning what should be submitted to the jury in this case. The court was of the opinion and adhered to his opinion in the submission, that the jury issue consisted in submitting for the consideration and determination of the jury the value of the automobile, which in the end was not very important, for further reasons which will be suggested, and the proposition as to whether or not after the car was stolen it ever came back into the possession of the Pierces for any substantial period of time, and the instructions being further to the effect that if this automobile did not come into the possession of the Pierces, that they were entitled to recover the value of the car from the Insurance Company, subject, however, to the extent of the liability incurred by the company. This amount was $1650.00, with a further provision, however, for a continued reduction of the amount of liability of three per cent per month. The jury having returned a verdict which the court did not accept, the court gave explicit directions as to the amount of the verdict. What that first verdict was is not indicated in the record, but the court evidently took cognizance of whatever amount the jury intended to return, then figured out for the jury the amount of indemnity for which the company might be liable under the terms of the. policy, originally $1650.00, reduced three per cent a month from the time the policy was issued, and in effect directed the jury to return a verdict for that amount, which was the verdict returned by the jury for $1563.79. The court evidently was of the opinion that all other matters that existed in the case were matters of law. The court recognized the verdict and overruled a motion to set it aside and gave the Braham Company a lien for the balance of its claim against the Pierces on the verdict.

There is further claim of error. The court primarily permitted the defendant insurance company to file an amendment to its answer. This was after the case had been submitted to the jury and a verdict returned, which amendment to the answer set up in some detail those conditions and transactions between the Pierces and the Finance Company relating to the action for judgment, the application of the amount received in foreclosure upon the indebtedness of the Pierces to the Indemnity Company, a transaction which it was reasonable to presume the Insurance Company was not cognizant of at the time the original answer was filed. The Insurance Company and the Finance Company in their relations as insured and insurer were antagonistic parties. After admitting the filing of this amended answer, counsel for the Pierces filed a motion asking the court to strike from the files this amendment. This proposition being argued by counsel, the court recognized this motion and struck the amendment from the files. This is also claimed to have been error. It is claimed by counsel for the Pierces, as is understood, that this amendment was in its nature a departure, in effect, from the defense originally set up in the answer. While it may be assumed that the subject of departure is sometimes recognized in an answer, it would very rarely occur except where there is claimed there has been a departure in a reply from the allegations of a petition. Whatever may have been the fact as to this,

we think the court properly accepted this amendment and permitted it to be filed and was in error in striking it from the files. It presented the situation between the parties as developed by the evidence and the power of the court with relation to amendments to conform the pleadings to the evidence, especially in defense, is quite broad. The court adhered to his original conception of the issues as raised by the petition of the plaintiffs and was in error in so doing.

Now, it is said that the insurer is entitled to salvage where it adjusts and pays the loss on the basis of the actual cash value of the automobile at the time of the loss. There is a citation from Sunderlin on Automobile Insurance, page 195, §369. Counsel for the Insurance Company claimed that the Insurance Company should have been entitled to what is denominated salvage, by reason of the fact that while the car itself was not returned to the Pierces, it was sold under an execution, a matter in which the Insurance Company had no authority and with which it had no connection, and for which it could not be held responsible, and the Finance Company had a right to sell on execution, which was done. The automobile was sold for $1105.00, with a net price of $930.00, which sum the Pierces received as a credit and benefit to them, not paid directly to them but by reason of the rights which they had given the Insurance Company the Insurance Company had a right to and did apply it to the indebtedness of the Pierces to the Finance Company and lessened the debt of the Pierces to the Finance Company to $337.63. It may be observed that if this judgment were to stand, the Pierces would receive a much larger benefit than they were entitled to. The automobile when stolen was not claimed by them to have been worth over $1700.00. If they collect this insurance verdict of $1528.78 and then have the benefit of the $990.00 on the lessening of their debt, then they have received from the car the sum of those two items, some twenty five hundred dollars, for their car, which they only claim was worth $1750.00. The balance owed by the Pierces to the Finance Company was $337.63, taking the value at $1700.00, and, as has been suggested, the jury did not precisely determine the value, but that is all that was claimed for it. The jury determined to the extent of the insurance $1528.78, reduced by $990.00, the credit which the Pierces received, lessened their interest in the car to $710.00. They still owe $337.63 to the Finance Company, which the Common Pleas Court made a lien upon the judgment. That sum taken from the $710.00, would leave $372.37 net, upon this basis of computation, to which the Pierces would be entitled.

Another suggestion, the value of the car, $1700.00, and the Pierces not taking into consideration the foreclosure but the amount of indebtedness of Pierces to the Finance Company is $1625.78, which would tend to indicate that the Pierces only had a valuable interest of $171.32. It is not profitable, however, to indulge in figures, and this computation is not suggested as any ultimate or determinative result arrived at by this court as to the rights of the parties, but simply a sort of illustrative figuring out of what the verdict of the jury would logically and perhaps necessarily lead to if this verdict were permitted to stand, and upon this proposition of salvage the Common Pleas Court was in error in not recognizing it.

It therefore follows, from what has been said, that the judgment of the Court of Common Pleas is reversed and the cause remanded.

FARR and POLLOCK, JJ, concur.