395 S.E.2d 559

Sherwood SPARKS, Sydney Larrick, Sara Otto, Nancy Straub, Jim Parker, Howard Earehart, Shirley Minter and Tom Stone, Trustees of the Beckley United Methodist Temple of Beckley, who sue as such Trustees and Members of the Beckley United Methodist Temple, on Behalf of the Beckley United Methodist Temple, an Unincorporated Association

v.

FARMERS FEDERAL SAVINGS AND LOAN ASSOCIATION, a Federally Chartered Savings and Loan Association.

No. 19428.

Supreme Court of Appeals of West Virginia.

July 20, 1990.

G. Berk Lynch, Lynch, Mann, Smith & Mann, Beckley, for Sherwood Sparks et al.

David L. Braveman, Kenneth J. Roeberg, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, Pa., Philip B. Hereford, Hereford & Hereford, Charleston, for Farmers Federal Sav. and Loan Ass'n.

BROTHERTON, Justice:

The petitioners, Sherwood Sparks, et al., are trustees of the Beckley United Methodist Temple ("United"), an unincorporated association located in Beckley, West Virginia. On October 1, 1985, United filed suit against Farmers Federal Savings and Loan Association ("Farmers"), a federally chartered savings and loan association, alleging that Farmers had breached a loan commitment agreement with United.

On July 3, 1981, Farmers had issued a loan commitment letter to United in which Farmers agreed to extend to United $1.7 million in permanent financing. United intended to use this loan to pay off a short-term $1.5 million construction loan and finance the construction of a new church facility. In order to secure the loan, on July 13, 1981, United paid Farmers a $8,500 "nonrefundable" commitment fee. Although the Farmers loan was supposed to be funded by July 3, 1983, the commitment letter contained a series of conditions that United was required to fulfill before Farmers was obligated to fund the loan.

On August 2, 1983, Farmers withdrew from its commitment to make the $1.7 million loan to United because, according to Farmers, (1) due to construction cost overruns, the Farmers loan would have been insufficient to retire the short-term construction loan; (2) United incurred cost overruns totalling nearly $600,000; (3) the construction of United's new facility was not completed by July 3, 1983; (4) United failed to provide Farmers with pledge information required under the loan commitment agreement; and (5) United failed to sell its then-existing facility, thereby altering quite drastically United's financial ability to repay the Farmers loan.

In an attempt to replace the $1.7 million loan after Farmers withdrew its commitment, United extended its $1.5 million short-term construction loan with the Raleigh County National Bank and utilized $200,000 from a $500,000 loan from the New River Banking & Trust Company for permanent financing. On September 25, 1984, United secured permanent financing in the form of a $1.6 million loan from the Raleigh County National Bank and other participating banks. The interest rate on this loan is set at the bank's base lending rate, plus 1%, with a floor of 10% and a ceiling of 16%.

On May 2, 1986, Farmers moved for summary judgment on the grounds that United had not been damaged by Farmers' alleged breach. Farmers denied it breached the commitment and claimed that it was no longer obligated to fund the loan due to United's failure to meet the conditions contained in the commitment letter. On December 15, 1986, the parties filed stipulations to certain facts relevant to the motion

for summary judgment, and, on November 2, 1987, the Circuit Court of Kanawha County denied Farmers' motion for summary judgment without an opinion.

Based upon an expanded record, Farmers subsequently filed a second motion for summary judgment. On June 22, 1989, the Circuit Court of Kanawha County granted Farmers' motion for partial summary judgment and dismissed the case. The court found that the damages alleged by United were speculative at best and inadequate to present a valid question of fact to a jury. Therefore, the court ordered that Farmers was entitled to judgment as a matter of law. However, the court ordered Farmers to pay United $8,500, plus interest, representing a refund of the "nonrefundable" commitment fee United paid Farmers. United appeals from this final order.

■ United argues that the only fact in dispute is whether they incurred a monetary loss as a result of Farmers' breach of the commitment agreement which they would not have suffered if the bank had performed its contract and made the agreed loan on schedule. Generally, the measure of damages for the breach of a contract to lend money is the difference between the interest at the contract rate and the subsequent rate which the borrower is compelled to pay upon securing replacement financing. *See Restatement of Contracts* § 343 (1932); *Restatement (Second) of Contracts,* § 351e (1981); *Hubbard v. Equitable Life Assur. Soc.,* 81 W.Va. 663, 95 S.E. 811 (1917).[1] However, in this case United does not fix its alleged damages by determining the additional costs it incurred as a result of the difference between the interest rate specified in the original loan commitment and the interest rate of the subsequent replacement loan. Instead, United asks this Court to award "special damages," defined as the money United was "obliged to pay out in order to secure a replacement loan." United calculates its special damages as follows:

1. *See generally,* Annot., 4 A.L.R.4th 682 (1981).

2. This entry of $4,136.28 for loss of interest on a $200,000.00 portion of the loan from New River Bank was not included in United's Petition for

| | |
|---|---|
| Additional interest on extended construction loan 7/1/83 | $248,594.63 |
| Forfeited loan commitment fee | 8,500.00 |
| Interest on forfeited loan commitment fee 7/1/83 to 9/25/84 | 3,263.69 |
| Interest lost on additional interest paid on construction loan from 7/1/83 to 9/25/84 | 80,977.81 |
| Loss[2] of interest on interest paid from New River Bank and Trust from 7/1/83 to 9/25/84, monthly rate of 7% (Loan of New River Banking and Trust represents a difference between construction loan of $1,500,000.00 and Farmers Federal's promised loan of $1,700,000.00) (R. 167, pp. 64 & 65, see also Dep. Exhibit 1–1A) | 4,136.28 |
| TOTAL SPECIAL DAMAGES SUSTAINED | $345,472.59 |

Farmers disputes United's claim of entitlement to special damages and argues instead that, if Farmers had funded the $1.7 million loan, United's loan costs for the period ending September 30, 1988, would have been as follows:

| | | |
|---|---|---|
| (a) | Commitment fee paid to Farmers | $ 8,500.00 |
| (b) | Interest from July 3, 1983 to July 2, 1984 at 13.36% | 226,031.01 |
| (c) | Interest from July 3, 1984 to July 2, 1985 at 13.90% | 232,559.12 |
| (d) | Interest from July 3, 1985 to September 30, 1988 at 11.50% | 587,726.46 |
| | TOTAL | $1,054,816.57 |

According to Farmers, the amount of principal unpaid as of September 30, 1988, would have been $1,556,279.55. However, because Farmers did not fund the loan, United actually incurred the following loan costs as of September 30, 1988:

| | | |
|---|---|---|
| (a) | Commitment fee paid to Farmers | $ 8,500.00 |
| (b) | Interest paid to continue loans | 232,735.68 |
| (c) | Interest on $200,000.00 of New River Banking and Trust loan | 30,993.68 |
| (d) | Interest on Bank of Raleigh loan from September, 1984 to December, 1984 at 14.00% | 41,611.12 |
| (e) | Interest on Bank of Raleigh loan for January, 1985 to September, 1985 at 11.75% | 137,474.82 |
| (f) | Interest on Bank of Raleigh loan for October, 1985 to June, 1986 at 10.75% | 120,937.10 |
| (g) | Interest on Bank of Raleigh loan for July, 1986 to September, 1988 at 10.00% | 310,497.55 |
| | TOTAL | $882,749.95 |

Appeal and Writ of Error filed on November 6, 1989, in which United originally calculated its total special damages as $341,336.31.

The unpaid principal on the Raleigh County National Bank loan as of September 30, 1988, was $1,286,651.00.

Comparing the figures contained in these tables, Farmers argues that the alternative financing actually saved United $172,066.62 in interest costs. Farmers maintains that these savings are likely to continue because the Raleigh County National Bank loan has a lower interest floor and ceiling than the Farmers loan, and because United's interest payments have been lower under the replacement financing, United's principal indebtedness has been amortized more rapidly, thereby resulting in an additional savings of approximately $270,000.

United argues that, but for Farmers' breach of contract, the church would not have expended the "special damages" itemized above in the amount of $345,472.59, together with prejudgment interest. United maintains that it incurred actual and demonstrable damages as a direct result of the contract breach and asks that this Court reverse the judgment of the lower court in part and remand only with respect to the amount of damages recoverable by United. However, Farmers requests that this Court enter judgment in favor of Farmers and deny that United is entitled to the $8,500 "nonrefundable" commitment fee or, in the alternative, remand the case to the lower court with directions to enter such judgment in favor of Farmers.

■ After reviewing the record, we find evidence which supports the circuit court's final order. Specifically, we note that in stipulations agreed upon by the parties on December 12, 1986, United acknowledged that by 1993 its replacement financing will have cost $80,422.53 less than the original

Farmers loan.[3] For this reason, we conclude that the circuit court was correct in finding no cause of action in United's prayer for damages.

■ In awarding United its $8,500 "nonrefundable" commitment fee plus prejudgment interest, the circuit court apparently relied upon *Hidalgo Properties, Inc. v. Wachovia Mortgage Co.*, 617 F.2d 196 (10th Cir.1980). In *Hidalgo*, the United States Court of Appeals for the Tenth Circuit stated that, "Wachovia cannot exempt itself from a suit to recover this element of damages [the loan commitment fee] by designating fees paid as non-refundable in an agreement which it prepared." *Id.* at 199. Likewise, in this case, we believe that in light of the fact that the commitment fee was an expense incurred by the borrower in securing the loan, it was appropriate for the circuit court to permit United to recover this fee once the court determined that Farmers had indeed breached the loan commitment agreement.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

WORKMAN, J., deeming herself disqualified, did not participate in the decision of this case.

---

3. At a deposition taken on February 25, 1988, Thomas B. Briers, the treasurer of United's Building Committee, responded to questioning on this issue as follows:

Question: "Am I to understand then that if Farmers had actually funded its loan commitment to the United Methodist Temple in July of 1983 from the period July, 1983, to September 25, 1984, it would have cost the church more money to Farmers than it otherwise did actually cost the church?"

Answer: "It is a fact that we would have paid more interest to Farmers Federal during that period than we paid on the construction loan during that period."

Similarly, during deposition testimony on February 25, 1988, J. Sydney Larrick, a chairperson on United's Board of Trustees and a member of its Finance Committee, admitted that United was paying less for its loan from the Bank of Raleigh than it would have paid for the Farmers loan. While noting the futility of speculating on future interest rates, Larrick admitted that, at that time, United was "better off" for having secured the $1.6 million loan from the Bank of Raleigh.